# TURANO LAW

———

sturano@turanolaw.com

275 MADISON AVENUE
35TH FLOOR
NEW YORK, NY 10016

———

60 PARK PLACE
SUITE 1101
NEWARK, NJ 07102

———

TEL (917) 594-5666
FAX (917) 594-5667

TEL (973) 648-6777
FAX (917) 594-5667

November 4, 2024

Hon. Paul A. Engelmayer, U.S.D.J.
Thurgood Marshall U.S. Courthouse
Courtroom 1305
40 Foley Square
New York, New York 10007

Re:    United States v. Dajahn McBean, et al.,
       24-cr.- 541 (PAE)

Dear Judge Engelmayer:

Pursuant to 18 U.S.C. § 3145(b), Defendant Karl Smith ("Smith") appeals his detention by Magistrate Judge Sarah L. Cave and submits this letter in support of his application for pretrial release.

**Procedural History**

Smith was taken into custody without incident by federal agents on October 2, 2024, upon the unsealing of an Indictment charging him and Chelsey Harris ("Harris") with participating in a murder-for-hire conspiracy resulting in personal injury and death, in violation of 18 U.S.C. § 1958; stalking resulting in life threatening bodily injury and death, in violation of 18 U.S.C. §§ 2261(b)(1) and (2), 2261A(2)(A), and 2; and conspiracy to destroy records, in violation of 18 U.S.C. § 3. Subsequently, the Indictment was superseded to add Dajahn McBean ("McBean") as a co-defendant.

The crux of the Government's allegations is that McBean, the alleged leader of the street gang Real Ryte, a set of the Bloods, directed a conspiracy to murder an individual he was feuding with (identified in the Superseding Indictment as "Victim-1") over social media in December 2023. Specifically, the Government alleges that McBean paid Harris and Smith to lure Victim-1 to a Queens nightclub, where shooters would be waiting to kill Victim-1. After a failed attempt on December 24, 2023, the Government alleges Harris and Smith again lured Victim-1 to a different Queens nightclub two days later, where gunmen fired numerous shots directly into Victim-1's vehicle injuring him and killing his girlfriend, Clarisa Burgos.

1

**Bail Argument**

As the Supreme Court held in *United States v. Salerno*, 481 U.S. 739, 755 (1987), "[i]n our society liberty is the norm, and detention prior to trial . . . is the carefully limited exception." This presumption of release is encapsulated in the Bail Reform Act ("BRA"), 18 U.S.C. § 3142 *et al.*

The BRA requires the release of a defendant on the "least restrictive" conditions necessary to "reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). To that end, a court "shall order the pretrial release of a person on personal recognizance, or upon the execution of an unsecured appearance bond in an amount specified by the court, … unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). Both the BRA and case law make clear that "it is only a limited group of offenders who should be denied bail pending trial." *United States v. Shakur*, 817 F.2d 189,195 (2d Cir. 1987) (quoting S. Rep. No. 98-225, at 7 (1983), as reprinted in 1984 U.S.C.C.A.N. 3182, 3189); *see also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that this Act clearly favors non-detention.").

The Government has "the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community," *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001) (*citing*, *United States v. Rodriguez*, 950 F.2d 85, 88 (2d Cir. 1991)). It also retains the "ultimate burden of persuasion by the lesser standard of preponderance of the evidence that the defendant presents a risk of flight." *Id.* at 436, *citing*, *States v. Martir*, 782 F.2d 1141, 1146 (2d Cir. 1986). Furthermore, the Government is required to establish that no assortment of bail conditions will assure the defendant's presence and the safety of others. *See* 18 U.S.C. § 3142(e) and (f); *see also United States v. Sabhnani*, 493 F.3d 63 75 (2d Cir. 2007).

An analysis of each of the statutory factors set forth in 18 U.S.C. § 3142(g), together with the proposed bail package and any appropriate conditions of release deemed necessary by this Court, demonstrates that the Government will be unable to meet its burden of proof that Smith presents a flight risk or a danger to society that cannot be addressed through any combination of conditions for pretrial release.

### 1. Proposed Conditions of Release

The defense proposes these release conditions: (1) a personal recognizance bond secured by several Financially Responsible Persons ("FRP"); (2) home confinement with GPS monitoring; (3) strict travel limits; (4) surrender of all travel documents; (5) strict compliance with all standard conditions of pretrial release; (6) release into the custody of a third-party custodian "who agrees to assume supervision and to report any violation of a release condition to the court";[1] and (7) any other conditions the Court

---

[1] The proposed bail conditions include that Smith live with his mother, ███████████████, with whom he has lived in Queens his entire life until his arrest. Ms. ███████ is not connected to any of the allegations in the Superseding Indictment, does not have a criminal record, and will take seriously the obligation to supervise her son and to report any violation of a release condition to Pretrial Services. She is also prepared to co-sign an appearance bond as a FRP.

believes necessary. *See* 18 U.S.C. § 3142(c)(1)(B)(i). The defense submits that this bail package is appropriate to assure Smith's presence at all future court appearances and to protect the community.

Counsel for Smith vetted five of his friends and family who are willing to sign as FRP, fully understand the obligations and responsibilities associated with this undertaking, and willing to do whatever is required of them to provide the Court with confidence that Smith will not pose a danger to the community or a serious risk of flight. Among the list of proposed sureties is his mother and several long-time, close friends who are employed by the ███████████████████████████.

### 2. Smith is Not a Serious Risk of Flight

#### a. Supreme Court Precedent and the Plain Language of the BRA Prohibit this Court from Detaining a Defendant as an Ordinary "Risk of Flight"

Ordinary "risk of flight" is not a factor in 18 U.S.C § 3142(f). By its plain language, the BRA permits detention only when there is a "*serious* risk that [the defendant] will flee."[2] *See* 18 U.S.C. § 3142(f)(2)(A) (emphasis added). There is some risk of nonappearance and potentially some risk of flight in every criminal case; "serious risk" of flight means something more. *See United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988) ("[D]etention is permitted only when the charge is for certain enumerated crimes, 18 U.S.C. § 3142(f)(1). . . , or when there is a serious risk that the defendant will flee or obstruct . . . justice.").

The BRA's legislative history also makes clear that detention based on serious risk of flight is only appropriate under "extreme and unusual circumstances."[3] The Government bears the burden to demonstrate that the risk of flight in a particular case rises to the level of extreme or unusual, and no such showing can be made here. Courts have articulated the elements of this extreme or unusual standard in different ways, but the upshot remains the same—defendants are "serious" flight risks in only rare cases. *See United States v. Santos-Flores*, 794 F.3d 1088, 1090 (9th Cir. 2015) ("Only in rare cases should release be denied, and doubts regarding the propriety of release are to be resolved in favor of the defendant."); *see also United States v. Runsdorf*, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022) (finding that the government must establish "a *heightened* likelihood of flight that is demonstrably more than the risk posed by a generic defendant charged with a similar offense" (emphasis added)).

---

[2] *See* Alison Siegler, *Freedom Denied: How the Culture of Detention Created a Federal Jailing Crisis*, at 91 ("*[O]rdinary* risk of flight is … an impermissible basis on which to order detention at the Initial Appearance or schedule a Detention Hearing.") (2022), https://freedomdenied.law.uchicago.edu/report.

[3] *See Bail Reform Act of 1983: Rep. of the Comm. on the Judiciary*, 98th Cong. 48 (1983) ("Under [18 U.S.C. § 3142(f)(2)(A)], a pretrial Detention Hearing may be held upon motion of the attorney for the government or upon the judicial officer's own motion in three types of cases. . . . [T]hose [types] involving . . . a serious risk that the defendant will flee . . . *reflect the scope of current case law that recognizes the appropriateness of denial of release in such cases*.") (emphasis added) (citing *United States v. Abrahams*, 575 F.2d 3, 8 (1st Cir. 1978)—which held that only a "*rare case of extreme and unusual circumstances* . . . justifies pretrial detention"—as representing the "current case law"); *see also Gavino v. McMahon*, 499 F.2d 1191, 1995 (2d Cir. 1974) (holding that in a noncapital case the defendant is guaranteed the right to pretrial release except in "extreme and unusual circumstances"); *United States v. Kirk*, 534 F.2d 1262, 1281 (8th Cir. 1976) (holding that bail can only be denied "in the exceptional case").

The potential of a lengthy sentence is not a legitimate basis for finding a serious risk of flight. *See Friedman*, 837 F.2d at 50 ("In other cases concerning risk of flight, we have required more than evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight."); *United States v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005) ("[I]t is generally accepted that more than evidence of the commission of a serious crime and the fact of a potentially long sentence is required to support a finding of serious risk of flight. A mere theoretical opportunity for flight is not sufficient grounds for pretrial detention" (citation omitted)); *United States v. Runsdorf*, 2022 WL 303548, at *4 (S.D. Fla. Jan. 24, 2022) (The government must establish "a heightened likelihood of flight that is demonstrably more than the risk posed by a generic defendant charged with a similar offense.").

### b. Smith's Nature and Characteristics Suggest he is Not a "Risk of Flight"

Although the defense bears no burden of proof, it is clear from Smith's history and characteristics discussed below that he does not pose a serious risk of flight. He enjoys a strong family-support network, which is evidenced by the proposed bail package and the attendance of family at friends during previous court proceedings. He has extremely deep ties to the community, his family, and the people willing to co-sign his bond. These proposed co-signors are FRP and each share a deep, personal relationship with him. Their incomes provide adequate collateral for an appropriate bond and the personal connection to him provides the moral suasion necessary for the Court's issuance of a bail, notwithstanding his significant sentencing exposure if convicted of the murder-for-hire conspiracy. These deep ties make any notion of evading legal proceedings not only improbable, but also unthinkable.

Smith was questioned by law enforcement numerous times during the ten months between the December 26, 2023 shooting and his October 2, 2024 arrest. Moreover, he took no steps to leave the jurisdiction after federal agents served him with a subpoena or after Harris was arrested two weeks before his arrest.

In addition, Smith has significant and long-standing ties to his New York Community. He was born and raised in and is a long-time resident of New York City. He does not have the financial means or foreign ties to flee the jurisdiction. Likewise, he does not have any drug or alcohol dependency or mental condition placing him a higher category to be a serious risk of flight. And, significantly, as discussed below, does not have any prior criminal history.

Certainly, any concerns about his flight risk can be alleviated by home incarceration enforced by electronic monitoring.

### 3. Smith is Not a Danger to the Community

Smith comes before this Court presumptively innocent and the Government unable to satisfy its burden of production to establish that no conditions of release exist to for his release on bail.

At age twenty-six, he does not have a criminal record or any history of gang affiliation. The charged crimes stem from an alleged singular plot to murder McBean's rival. There is no allegation that the charged conspiracy is ongoing or that Smith engaged in any racketeering acts before or after the December 24 and 26, 2023 shootings. He is not connected to past crimes committed by McBean and the Government provided no independent connection between McBean and Smith or even between Victim-1 and Smith. Furthermore, he is not alleged to be the shooter and neither the Superseding Indictment nor the factual allegations presented by the Government during the October 15th Detention Hearing or the

October 29, 2024 Arraignment and Status Conference, suggest Smith had a leadership or decision-making role in the alleged murder-for-hire conspiracy. Finally, the Government did not — nor can it — contend that he is capable of running a criminal enterprise under the proposed pretrial release conditions. If released to the third-party custody of Ms. ███████ (or any of the other proposed co-signors), placed on home incarceration, and under the supervision of Pretrial Services, Smith would not have the ability to have any continued involvement in the type of criminal activity alleged in the Superseding Indictment.

### 4.  Empirical Data Supports Defendant's Pretrial Release

Statistics support that it is extraordinarily rare for defendants on bond to flee or recidivate. The Court can be guided by the Administrative Office of the United States Courts' ("AO") statistics showing that nearly everyone released pending trial in the federal system appears in court and does not reoffend. In 2021, 99% of released federal defendants nationwide appeared for court as required and 99% were not arrested for new crimes on bond. *See* AO Table H-15 (Sept. 30, 2022), attached as Exhibit A. The Government cannot provide evidence that Smith should be among the approximately 1% of defendants who fail to appear in court or are rearrested on bond, let alone that there is a serious risk that the defendant intentionally will avoid court proceedings. Finally, Pretrial Services' Pretrial Risk Assessment ("PTRA") score likely overwhelmingly supports Smith's release on conditions.

### Conclusion

For the reasons expressed above, the defense respectfully requests that the Court release Smith under the proposed bail conditions.

Respectfully submitted,

/s/ *Stephen Turano*
Stephen Turano, Esq.
Attorney for Karl Smith

cc:  All Counsel of Record (by ECF)

5