# Mark S. DeMarco

Attorney At Law
100 Lafayette Street, Ste. 501
New York, New York 10013
718 239 7070
Fax 718-239-2141
MSDLaw@aol.com

March 17, 2026

Hon. Paul A. Engelmayer
United States District Court
Southern District of New York
40 Foley Square
New York, NY  10007

**BY ECF & ELECTRONIC MAIL**

> Re:   ***United States v. Dajahn McBean***
> **24 Cr. 541 (PAE)**

Your Honor:

## Introduction

 I write to respectfully request that this Court endorse the enclosed proposed order seeking discovery from the Federal Bureau of Prisons that the defense needs to rebut the government's allegation that Dajahn McBean will pose a future danger of violence if not sentenced to death and to affirmatively establish that he will not pose a future danger if sentenced to life imprisonment.

In its Notice of Intent to Seek the Death Penalty, the government alleges that Mr. McBean should die because he "presents a future danger as demonstrated by his ability and willingness to orchestrate a murder-for-hire scheme while in federal custody, as well as his criminal history that includes multiple offenses committed while on court supervision, including his role in a 2017 shooting."  Assuming Mr. McBean is convicted of a capital count, he is facing a sentence of life without parole or death. The government's  allegation of future dangerousness is therefore specific to the possibility that Mr. McBean would be dangerous while in the custody of the BOP.

The statistical information sought by this request is relevant to the question of whether Mr. McBean does indeed pose a risk of future dangerousness if sentenced to spend the remainder of his life in BOP custody.[1]

---

[1] It must be noted that some of the requested information sought by the defense has been previously disclosed in prior cases, see, e.g., *United States v. Mallay*, 02 Cr. 778 (SJ) (EDNY); *United States v. Basciano*, 05 Cr. 060 (NGG) (EDNY); *United States v. Watland*, 11 Cr. 038 (JLK) (D.Colo.); *United States v. Richardson*, 08 Cr. 139 (CC) (N.D.Ga.); *United States v.*

Hon. Paul A. Engelmayer
March 17, 2026

In *Barefoot v. Estelle*, 463 U.S. 880, 898 (1983), the Supreme Court held that while inherently unreliable, prediction of future danger was not unconstitutionally unreliable. The Court said that the evidence was not unconstitutional because capital juries must also have the benefit of "contrary evidence by the opposing party." This right of rebuttal is also specifically laid out in the Federal Death Penalty Act (FDPA), which requires that a defendant must be "permitted to rebut any information" presented by the government. 18 U.S.C § 3593(c).

Here, the Bureau of Prisons is in possession of data that will rebut its allegation of future dangerousness and the defense seeks access to that data so that the jury may have the benefit of contrary evidence and Mr. McBean's due process rights are protected. The data sought here is commonly obtained in federal capital prosecutions. It forms the basis of expert opinions as to the rates of violence in BOP, the factors which are associated with violence in BOP, and how that data applies to individual defendants. Counsel expects that defense experts will present evidence that the BOP can take steps to ensure that even the most violent offenders – a group of which Mr. McBean is certainly not a member – are not dangerous in prison. Based on the requested statistical data, counsel expects that defense experts will broadly testify to the following:

a.  The data indicates that the base rates of violent behavior in federal prisons are extremely low, meaning that there are few violent incidences overall. Counsel expects the data to show this because previous research and testimony in prior cases have consistently shown this to be true. The data sought will permit the experts to update these studies and present current, scientifically reliable and accurate information to the jury.

b.  The data is likely to support the rebuttal evidence that capital defendants, like Mr. McBean, when sentenced to life without parole or release (LWOP), do not commit more or more severe violent assaults than other prisoners in United States penitentiaries.

c.  The data will support the presentation of testimony that the nature and extent of the underlying offenses that led to capital charges are unrelated to the likelihood of being a danger in custody.

d.  There are established risk factors which the BOP relies upon to assess custodial level for sentenced inmates and those risk factors such as age and education can be effectively put to use in determining housing conditions for life sentenced inmates, thereby significantly reducing the risk of future violence. Moreover, personality characteristics are not

---

*McCluskey*, Crim. No. 10-2734 (JCH) (D.N.M.); *United States v. Caro*, 06 Cr. 001 (W.D.Va.).

Hon. Paul A. Engelmayer
March 17, 2026

     predictive of future violent behavior.

  e.   The data will provide defense experts updated data from which they can testify as to how inaccurate the government has been in asserting that capitally prosecuted inmates pose a future danger, offering the jury a basis for understanding that the government makes this allegation in many cases and is wrong in nearly every one of them.

**Argument**

  Dajahn McBean is entitled to a full and fair opportunity to rebut the future danger aggravating factor, which the government has elected to place at issue, under the Fifth, Sixth, Eighth and Fourteenth Amendments, as well as the FDPA. The Due Process Clause requires that "criminal defendants be afforded a meaningful opportunity to present a complete defense." *California v. Trombetta*, 467 U.S. 479, 485 (1984); *Gardner v. Florida*, 430 U.S. 349, 362 (1977) (denial of due process "when the death sentence was imposed, at least in part, on the basis of information which he had no opportunity to deny or explain").

**Dajahn Mcbean Is Entitled to the Information Because it Is Essential To Rebutting the Government's Claim That He Will Pose a Future Danger in Prison**.

  Mr. McBean must be given a full opportunity to present evidence to rebut any inference by the government that his incarceration for life would present a danger to other inmates and correctional staff. It is immaterial whether the government puts the inference in play by directly alleging, as here, an aggravating factor, or indirectly by introducing extensive evidence suggesting future danger. *See Kelly v. South Carolina*, 534 U.S. 246 (2002) (defendant entitled to rebut future danger inference even if implied and not explicitly argued). The Supreme Court has made clear that a court may not constitutionally prohibit a capital defendant from presenting evidence that he will pose a low risk of future violence in prison.  Under the Eighth Amendment, "evidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating."

  Under *Eddings v. Oklahoma*, 455 U.S. 104 (1982), such evidence may not be excluded from the sentencer's consideration." *Skipper v. South Carolina*, 476 U.S. 1, 5 n. 1 (1986) ("Where the prosecution specifically relies on a prediction of future dangerousness in asking for the death penalty, it is not only the rule of *Lockett* and *Eddings* that requires that the defendant be afforded an opportunity to introduce evidence on this point; it is also the elemental due process requirement that a defendant not be sentenced to death "on the basis of information which he had no opportunity to deny or explain.") (*quoting Gardner*, 430 U.S. at 362); *see also Simmons v. South Carolina*, 512 U.S. 154, 163–64 (1994) ("The trial court's refusal to apprise the jury of information so crucial to its sentencing determination, particularly when the prosecution alluded to the defendant's future dangerousness in its argument to the jury, cannot

Hon. Paul A. Engelmayer
March 17, 2026

be reconciled with our well established precedents interpreting the Due Process Clause.").

The importance of Mr. McBean's opportunity to fully rebut the future dangerousness aggravating factor cannot be overemphasized. Studies of capital jurors' decision-making process demonstrate that the allegation of future dangerousness is the most compelling aggravating factor in the eyes of jurors. See, e.g., Blume, Garvey & Johnson, Future Dangerousness in Capital Cases: Always "At Issue," 86 Cornell L. Rev. 397, 398 (2001); Constanzo & Constanzo, Jury Decision Making in the CapitalPenalty Phase, 16 Law & Hum. Behav. 185, 188–89 (1999). And whether addressed or not, future dangerousness is a question that nearly always weighs on the minds of capital jurors.

The FDPA requires that all aggravating factors be proven beyond a reasonable doubt. 18 U.S.C § 3593(d). This Court will instruct the jury that if the jury does not unanimously find that the future danger aggravating factor has been proven beyond a reasonable doubt, no juror can consider the aggravating factor in the weighing process even if that individual juror does believe that future danger has been proven. The failure to permit a meaningful opportunity to rebut this aggravating factor thus infects the entire process in the most fundamental way.

In opposing discovery requests such as this one, the government frequently takes the position it is not required to produce BOP data because defense expert testimony relies, in part, on studies that are more statistical in nature rather than personal to the defendant. This position is untenable for several reasons. First, that characterization of the evidence is incorrect. Much of the anticipated testimony will be based on factors specific to Mr. McBean (such as his age, education, good adjustment during his pretrial detention, and his criminal history). The statistical information will provide critical information about the place that Mr. McBean will be designated to spend the rest of his life (BOP custody) should he be convicted of a capital defense and spared the death penalty. That is the context in which the jury must make its determination as to whether he poses a risk for future danger.

Individualized prediction is always difficult, and this data will assist the jury in making a determination specific to Mr. McBean because they will hear evidence that addresses how similarly situated people have behaved. The requested data will demonstrate that, because of his personal history and characteristics, Mr. McBean is extremely less likely than other people to pose a future danger.

We expect that the defense experts in this case will use the statistics sought here to apply actuarial models that are the basis for predicting future behavior. Alexander Scherr, Daubert & Danger: The "Fit" of Expert Predictions in Civil Commitments, 55 Hastings L.J. 1, 15 (2003). They will compare Mr. McBean to federal inmates of similar age, education, criminal history and other personal characteristics, to extrapolate Mr. McBean's personal potential for violent misconduct in the BOP.  These types of opinions rest on the statistical prevalence of a

Hon. Paul A. Engelmayer
March 17, 2026

particular behavior over a set period of time under the same set of circumstances. The requested information is a fundamental group statistic in risk assessment and is considered to be the single most important piece of data necessary in making an accurate risk estimate.

**Dajahn McBean Is Entitled to the Information Requested Because it Is Essential to His Case in Mitigation.**

In addition to rebutting the government's allegation of future dangerousness as an aggravating factor, expert testimony based on the requested BOP data is independently relevant to mitigation. In *Skipper v. South Carolina*, supra, the Court held that a defendant must be permitted to introduce evidence that he will not pose a risk of future violence if sentenced to life imprisonment. Citing the all-encompassing mitigation principle announced in *Eddings*, 455 U.S. 104, *Skipper* held that "such evidence may not be excluded from the sentencer's consideration." 476 U.S. at 5. *See also United States v. Troya*, 733 F.3d 1125, 1135–37 (11th Cir. 2013) (exclusion of expert testimony that defendant "was likely to make a positive adjustment to prison" was abuse of discretion under *Skipper*).

The Supreme Court has repeatedly held that "a capital defendant is entitled to introduce any relevant mitigating evidence that he proffers in support of a sentence less than death." *Dawson v. Delaware*, 503 U.S 159, 167 (1992) (*citing Eddings*, 455 U.S. at 114, and Lockett v. Ohio, 438 U.S 586 (1978) (plurality opinion)). The Court has taken a broad view of what constitutes "relevant" mitigating evidence: any evidence that "tends logically to prove or disprove some fact or circumstance which a fact-finder could reasonably deem to have mitigating value." *McKoy v. North Carolina*, 494 U.S. 433, 440 (1990); *see also Tennard v. Dretke*, 542 U.S. 274, 284 (2004) ("When we addressed directly the relevance standard applicable to mitigating evidence in capital cases in *McKoy*, we spoke in the most expansive terms.") (internal citation omitted).

*Skipper* makes clear that, where "the jury could have drawn favorable inferences from . . . testimony regarding petitioner's character and his probable future conduct if sentenced to life in prison," then "there is no question but that such inferences would be 'mitigating' in the sense that they might serve 'as a basis for a sentence less than death'" under the Eighth Amendment. 476 U.S. at 4–5 (internal citations omitted). Such probable "future conduct" evidence is subject to the "well-established" constitutional rule that "the sentencer may not . . . be precluded from considering 'any relevant mitigating evidence.'" Id. at 4 (quoting *Eddings*, supra). "[E]vidence that the defendant would not pose a danger if spared (but incarcerated) must be considered potentially mitigating." Id. at 5 (emphasis added). As the Court explained, "precluding the defendant from introducing otherwise admissible evidence for the explicit purpose of convincing the jury that he should be spared the death penalty because he would pose no undue danger to his jailers or fellow prisoners and could lead a useful life behind bars if sentenced to life imprisonment" is unconstitutional. Id. at 7 (emphasis added).

Hon. Paul A. Engelmayer
March 17, 2026

The burden to receive discovery relating to mitigation is low, and a defendant need only present facts that "tend to show" that the requested materials are "helpful to the defense." *United States v. Muniz-Jaquez*, 718 F.3d 1180, 1183 (9th Cir. 2013); *see also United States v. Con-Ui*, No. 3:13-CR-123, 2016 WL 4140520, at *3 (M.D. Pa. Aug. 4, 2016) ("In order to receive discovery related to mitigation evidence, the requesting party 'need only establish a substantial basis for claiming' that a mitigating factor will apply at the penalty phase, in order to invoke the Government's obligation under *Brady* and its progeny to produce any evidence which is material to that mitigating factor.") (*quoting United States v. Beckford*, 962 F. Supp. 804, 811 (E.D. Va. 1997)).

For the foregoing reasons, it is clear that the requested materials are "helpful to the defense" and it is respectfully requested that the enclosed proposed order be endorsed by this Court.

Thank you for your attention to this matter.

Respectfully submitted,

*Mark S. DeMarco*

Mark S. DeMarco
Elizabeth Macedonio
Anthony Ricco
Ezra Spilke
Attorneys for Dajahn McBean

cc:     All Parties
        By ECF

enc.

6